# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 10, 2007  Decided February 12, 2008

No. 06-7207

HAROLD D. SCHULER, ON BEHALF OF HIMSELF AND OTHER
SIMILARLY SITUATED OLDER EMPLOYEES,
APPELLANT

v.

PRICEWATERHOUSECOOPERS, LLP,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 05cv02355)

———

*David L. Rose* argued the cause for appellant.  With him
on the briefs was *Dotie Joseph*.

*Eric M. Nelson* argued the cause for appellee.  With him
on the brief were *Stephen L. Sheinfeld* and *Minoti Patel*.  *Julie
A. Klusas Gasper* entered an appearance.

Before:  ROGERS, TATEL, and KAVANAUGH, *Circuit
Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: A sixty-three-year-old professional who works in his employer's Washington, D.C. branch office filed a charge with the Equal Employment Opportunity Commission's New York district office alleging that his employer, headquartered in Manhattan, is violating the Age Discrimination in Employment Act (ADEA) by maintaining a discriminatory partnership policy under which the company refuses to promote older qualified employees. After the EEOC dismissed the charge and informed the employee of his right to sue, the employee filed a class-action complaint in federal district court in Washington, D.C., alleging violations of the ADEA and the District of Columbia Human Rights Act and seeking relief for the company's failures to promote him in July 2004 and July 2005. The district court dismissed the complaint, holding that plaintiff failed to satisfy the ADEA's procedural requirements because he failed to file (1) his EEOC charge with the D.C. Office of Human Rights and (2) a new EEOC charge following the company's allegedly unlawful July 2005 promotion denial. We reverse. Plaintiff satisfied the ADEA's state filing requirement by virtue of a worksharing agreement between the EEOC and the D.C. Office of Human Rights, as well as through the Commission's referral of his charge to the New York State Division of Human Rights. And because plaintiff seeks damages flowing from the July 2004 ADEA violation alleged in his original EEOC charge through the present, his failure to file a new charge after the July 2005 nonpromotion decision is of no consequence.

## I.

The Age Discrimination in Employment Act makes it "unlawful for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Patterned after Title VII, the ADEA allows "[a]ny person aggrieved [to]

bring a civil action in any court of competent jurisdiction for . . . legal or equitable relief." *Id.* § 626(c)(1). Before doing so, however, plaintiffs must jump through two administrative hoops. First, under section 626(d) plaintiffs must file a discrimination charge with the EEOC. *See id.* § 626(d) ("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission."). Second, section 633(b) requires that plaintiffs also file a charge with an appropriate state agency:

> [If] an alleged unlawful practice occur[s] in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated.

*Id.* § 633(b). Under section 633(b), "resort to administrative remedies in deferral States by individual claimants is mandatory, not optional." *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 758 (1979). This requirement "is intended to screen from the federal courts those discrimination complaints that might be settled to the satisfaction of the grievant in state proceedings." *Id.* at 756.

In this case, appellee PricewaterhouseCoopers (PwC), a large accounting and professional services firm headquartered in New York City, maintains a "Partners and Principals Agreement" providing that each partner's "association with

the Firm shall cease at the end of the fiscal year in which he or she attains age 60," and, as a result, rarely promotes employees over the age of forty-five to partner. *See* Compl. ¶¶ 17-19; *see also Murphy v. PricewaterhouseCoopers, LLP*, 357 F. Supp. 2d 230, 245 (D.D.C. 2004) (noting, in a related case, that "PwC does not dispute that its Partnership Agreement requires mandatory retirement for partners or that fewer employees are admitted in higher age brackets . . . ."). Partners enjoy higher salaries, more generous retirement benefits, and greater responsibilities than other professional employees. Compl. ¶ 12.

Appellant Harold Schuler, a managing director in PwC's Washington, D.C. office, alleges that the company refuses to promote him "and other qualified older professional employees" to partner on the basis of age in violation of the ADEA. *Id.* ¶ 2. Schuler alleges he is the longest serving managing director in the firm, having been promoted to that position in 1994, and that his education, training, and experience qualify him for partnership.

The case before us is Schuler's second lawsuit against PwC. In May 2002, Schuler, along with a co-worker, C. Westbrook Murphy, sued the firm over the same allegedly discriminatory partnership policy. *See Murphy*, 357 F. Supp. 2d 230. Before initiating that suit, Schuler filed an administrative charge with the District of Columbia Office of Human Rights (DCOHR) alleging that PwC denied him promotion on the basis of age from 1999 to 2001. *Id.* at 236. Schuler "cross-filed" his charge with the EEOC, meaning that both the DCOHR and the Commission received a copy. Schuler and Murphy alleged violations of the ADEA, as well as the New York Human Rights Law (NYHRL) and the District of Columbia Human Rights Act (DCHRA), both of which also prohibit age discrimination. *See* D.C. Code § 2-

1401.01 *et seq.*; N.Y. Exec. Law § 290 *et seq.* The district court dismissed most of the ADEA claims for failure to file timely administrative charges with the EEOC. *See Murphy*, 357 F. Supp. 2d at 239-40. And of significance to the case now before us, the district court dismissed the NYHRL claims because, in its view, New York law requires plaintiffs to "allege that the actual impact of the discriminatory act was felt in New York." *Id.* at 244. The court allowed the plaintiffs' DCHRA claim and ADEA "disparate treatment" claim to go forward, however, and that case remains pending in the district court. *See id.* at 245, 249.

On February 23, 2005, Schuler, laying the groundwork for the case now before us, filed another EEOC charge alleging that PwC's promotion policy violates the ADEA. In particular, the class-action charge, which Schuler's counsel mailed overnight from his office in Washington, D.C. to the EEOC's New York district office, alleged that "PwC has followed and continues to follow age discriminatory practices for promotion to partnership that favor employees younger than 40 years old and harm me and other older employees." EEOC Charge of Discrimination, No. 160-2005-01264 (February 2005). Schuler's charge also alleged that "PwC has promoted more than 1,500 of its professional employees to partnership on and after July 1, 1998 through at least July 1, 2004, and not one (0) of those promoted was over the age of 60 when promoted." *Id.* In a five-page declaration attached to the charge, Schuler asserted that he and other employees had failed to make partner because of "policies and procedures adopted and maintained by [PwC]'s Senior Partner and Chief Executive Officer Dennis Nally and the 14 other members of its Board of Partners and Principals," and alleged that the "Board decides each year which employees shall be promoted to partnership." Decl. of Harold Schuler 1,

4. Schuler stated that he resides in Virginia and alleged that PwC maintains its headquarters in New York City.

Schuler addressed his charge to the "New York City (NY) Commission Human Rights [sic], and New York State Div. of Human Rights, and EEOC." He included the following instruction: "I want this Class Action Charge filed with both the EEOC and the State and local Agency, if any." EEOC Charge of Discrimination. At the end of his supporting declaration, Schuler typed, mostly in capital letters, "This complaint should be CROSS FILED WITH THE HUMAN RIGHTS AGENCIES OF NEW YORK CITY, THE STATE OF NEW YORK, AND WASHINGTON, D.C." Decl. of Harold Schuler 5.

Three weeks later, the EEOC informed Schuler by letter that it had received his ADEA charge and would file it with the New York State Division of Human Rights (NYSDHR), assuring him, "You need do nothing further at this time." Letter from Patricia M. Araujo, Investigator, EEOC, to Harold Schuler (Mar. 14, 2005). The letter made no mention of the District of Columbia Office of Human Rights, however, and nothing in the record indicates whether either the EEOC or Schuler ever referred the charge to that local agency.

On April 28, 2005, the EEOC, acting again through its New York district office, dismissed Schuler's charge with the cryptic explanation, "Case in Court/District of Columbia," EEOC Dismissal and Notice of Rights (Apr. 28, 2005)—an apparent reference to the still pending *Murphy* litigation. *See Schuler v. PricewaterhouseCoopers, LLP*, 457 F. Supp. 2d 1, 3 n.2 (D.D.C. 2006). The notice informed Schuler that he could file suit in federal district court within ninety days, a time limit the parties tolled as they attempted to settle the

case. When negotiations failed, Schuler, seeking relief for PwC's failure to promote him to partner in July 2004 and again in July 2005, filed the present action in the U.S. District Court for the District of Columbia.

Schuler's complaint includes two claims: one federal, one state. First, pointing to PwC's mandatory partner retirement policy, Schuler alleged that "PwC has engaged in a pattern and practice of age discrimination in making decisions regarding assignments and promotions in violation of Section 4 of the ADEA." Compl. ¶ 50. Second, asking the court to invoke its supplemental jurisdiction, Schuler brought a claim under the DCHRA. D.C. Code § 2-1401.01 *et seq.* PwC filed an answer and, arguing that Schuler had failed properly to exhaust his administrative remedies before filing suit, moved to dismiss the case on the pleadings. *See* FED. R. CIV. P. 12(c).

The district court granted PwC's motion and dismissed the complaint. Explaining that under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), "each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice for which an administrative charge must be filed," the court considered PwC's two allegedly improper failures to promote Schuler as discrete incidents and analyzed each independently. *Schuler*, 457 F. Supp. 2d at 4 (citations and internal quotation marks omitted). Beginning with PwC's July 2004 decision not to promote Schuler to partner, the district court found that Schuler had failed to file his charge with the DCOHR. According to the court, because the District of Columbia is a "deferral state" under the ADEA, i.e., it provides an administrative remedy for employment discrimination, the statute required Schuler to file with the state agency there—the site of his alleged

injury—before seeking redress in federal court. *Id.* The court found it irrelevant that Schuler's charge had been cross-filed with the New York State Division of Human Rights. *See id.* at 5. Turning next to the July 2005 nonpromotion decision, the court found that Schuler had failed to file an EEOC charge arising out of the July 2005 promotion denial within the ADEA's 300-day statute of limitations period. *Id.* Schuler had filed his only charge in February 2005—four months *before* PwC's second allegedly discriminatory failure to promote him. Having thus disposed of Schuler's federal claims, the district court declined to exercise supplemental jurisdiction over Schuler's state-law DCHRA claim. *Id.*

Schuler now appeals. We review a district court's decision to grant a motion for dismissal on the pleadings de novo. *See Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992). "We will affirm the district court if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Id.* (citation and internal quotation marks omitted). Moreover, "the factual allegations of the complaint must be taken as true, and *any* ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader." *Doe v. DOJ*, 753 F.2d 1092, 1102 (D.C. Cir. 1985).

## II.

Before determining whether Schuler has satisfied the ADEA's administrative prerequisites, we must resolve a dispute between the parties over the precise nature of Schuler's claims. Schuler argues that contrary to the way the district court characterized his complaint, he has alleged a "pattern and practice" of age discrimination in violation of the ADEA, which is rooted in PwC's mandatory retirement and partnership promotion policies. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977) (explaining that in a

Title VII "pattern or practice" case, "discrimination [is] the company's standard operating procedure—the regular rather than the unusual practice"). According to Schuler, these policies led PwC's board to deny him and other older employees admission to the firm's partnership in July 2004 and July 2005. PwC, echoing the district court's opinion, refers to the 2004 and 2005 nonpromotion decisions as separate claims to be analyzed and disposed of independently.

We need not dwell long on this dispute, for the complaint answers the question in Schuler's favor. Schuler did raise two claims, but not the ones the district court thought. As noted above, Schuler's first claim, raised under the subject heading "Claim One," alleges the following ADEA violation:

> PwC has discriminated against Schuler and against other professional employees of PwC over the age of 45 by denying them promotions to partnership on the basis of their age. . . . PwC's discriminatory promotional practices are guided by an underlying discriminatory policy that requires all partners to leave their employment with PwC when they attain age 60.

Compl. ¶ 48. Put simply, Schuler's first claim is this: "PwC has engaged in a pattern and practice of age discrimination in making decisions regarding assignments and promotions in violation of section 4 of the ADEA, 29 U.S.C. § 623(a)." *Id.* ¶ 50. The dates July 1, 2004 and July 1, 2005 appear nowhere in claim one. Schuler's second claim, styled "Claim Two," alleges similar violations of the DCHRA. Like Schuler's federal claim, this state law claim makes no reference to individual nonpromotion decisions, but rather incorporates the rest of the complaint by reference. Only in the complaint's jurisdiction and fact sections does Schuler

mention the "two discrete incidents of discrimination" around which the district court framed its opinion. *Schuler*, 457 F. Supp. 2d at 4. The jurisdiction section explains that the "action seeks . . . relief for PwC's refusal to promote Schuler and other qualified older professional employees on July 1, 2004 and July 1, 2005," Compl. ¶ 2, and the fact section relates a string of statistics demonstrating how PwC's allegedly discriminatory promotion policies have injured older employees over the years, including him. *Id.* ¶¶ 22-23, 39. Indeed, Schuler claims that PwC's policy has consistently and unlawfully operated to his disadvantage since the year 2000. *Id.* ¶ 39. In short, Schuler alleges that PwC's discriminatory retirement policy, which begets a discriminatory promotion policy, violates the ADEA to his detriment and to the detriment of the class of older workers he seeks to represent. That Schuler now seeks relief for the policy's continued application in 2004 and 2005 is neither here nor there. We therefore read Schuler's complaint as he wrote it—alleging one ADEA claim based on PwC's "pattern and practice" of discriminatory promotion decisions and one state law claim under the DCHRA challenging the same policy.

Having thus identified Schuler's claims, we turn to the first question before us: has Schuler satisfied the ADEA's administrative preconditions for filing suit in federal court? By filing his February 2005 charge with the EEOC's New York district office, Schuler plainly satisfied section 626(d)'s requirement that he file a complaint with the EEOC. The district court, however, dismissed the case, concluding that Schuler had failed to satisfy section 633(b)'s requirement that he also file his charge with a state agency authorized to "grant or seek relief from [the alleged] discriminatory practice." 29 U.S.C. § 633(b). Challenging this decision, Schuler argues that he fulfilled this administrative prerequisite in two ways:

(1) through the operation of a "worksharing agreement" between the EEOC and the DCOHR under which his charge was "deemed filed" with the District of Columbia agency; and (2) by virtue of the EEOC's cross-filing his charge with the NYSDHR in New York. We address each argument in turn.

*The D.C. Worksharing Agreement*

EEOC regulations, specifically 29 C.F.R. § 1626.10, allow the Commission to "enter into agreements with State or local fair employment practices agencies to cooperate in enforcement, technical assistance, research, or public informational activities, and [to] engage the services of such agencies in processing charges assuring the safeguard of the federal rights of aggrieved persons." *Id.* § 1626.10(a). The regulations further provide that these agreements may "authorize such agencies to receive charges and complaints pursuant to § 1626.5 and in accordance with the specifications contained in §§ 1626.7 and 1626.8." *Id.* § 1626.10(b). The first of these provisions allows aggrieved employees to submit EEOC charges "to any office of the Commission or to any designated representative of the Commission," *id.* § 1626.5, the second establishes timeliness requirements, *id.* § 1626.7, and the third prescribes the necessary substantive contents of charges, *id.* § 1626.8. Critically for this case, the regulation's final subsection provides:

> When a worksharing agreement with a State agency is in effect, the State agency will act on certain charges and the Commission will promptly process charges which the State agency does not pursue. *Charges received by one agency under the agreement shall be deemed received by the other agency* for purposes of § 1626.7.

*Id.* § 1626.10(c) (emphasis added). Pursuant to these regulations, the EEOC has entered into worksharing agreements with both the NYSDHR and the DCOHR. Thus, Schuler argues, when he filed his charge with the EEOC's New York district office, it should have been "deemed received" by the DCOHR, *id.*, thereby satisfying ADEA section 633(b) and clearing the way for his federal suit.

PwC counters that these worksharing agreements bind only individual EEOC field offices to individual state agencies, meaning that the New York agreement allows the NYSDHR and the Commission's New York office to refer charges to one another while the D.C. agreement does the same for the DCOHR and the EEOC's District of Columbia field office. But because the EEOC's New York office— where Schuler filed his charge—has no contractual relationship with the DCOHR, PwC argues that the charge cannot be "deemed received" by that agency, *id.*, which, according to PwC, is the only state agency "authoriz[ed] . . . to grant or seek relief from [the alleged] discriminatory practice." 29 U.S.C. § 633(b). And because nothing in the record indicates the DCOHR ever actually received a copy of Schuler's charge, either from the Commission or from Schuler himself, PwC insists that the district court correctly dismissed the action for failure to satisfy ADEA section 633(b).

Resolving this dispute requires an analysis of the worksharing agreement, which the EEOC, acting in accordance with 29 C.F.R. § 1626.10, has signed with the DCOHR. Because that "worksharing agreement . . . is in effect, . . . [c]harges *received by one agency under the agreement shall be deemed received by the other agency*." *Id.* § 1626.10(c) (emphasis added). The D.C. worksharing

agreement's first operative provision expressly implements this regulation, stating, "[i]n order to facilitate the assertion of employment rights, the EEOC and the [DCOHR] each designate the other as its agent for the purpose of receiving and drafting charges." D.C. Worksharing Agreement ¶ II.A. Read together, the regulation and agreement thus make clear that for all intents and purposes, the DCOHR receives charges filed with the EEOC.

Even if this arrangement alone fails to refute PwC's argument, it bears mentioning that the DCOHR has waived its right to process age discrimination claims initially filed with the EEOC. The worksharing agreement provides that "[t]he EEOC and the [DCOHR] will process all Title VII, ADA, and ADEA charges that they originally receive." *Id.* ¶ III.A. Deferral state filing requirements are designed to "give state agencies a prior opportunity to consider discrimination complaints," *Love v. Pullman Co.*, 404 U.S. 522, 526 (1972), and states may voluntarily waive that right if they wish, s*ee EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 117 (1988) (holding that states may "waive the [Title VII] 60-day deferral period but retain jurisdiction over discrimination charges by entering into worksharing agreements with the EEOC"). Here, the District of Columbia has preemptively declined its opportunity, effectively telling the EEOC that it wants nothing to do with ADEA claims the Commission receives first. Had the D.C. agency physically received Schuler's charge, it would have taken no action on it.

Accordingly, absent any indication to the contrary, we hold that the D.C. worksharing agreement alone sufficed to "commence[]" proceedings under state law as ADEA section 633(b) requires. In *Griffin v. City of Dallas*, 26 F.3d 610 (5th Cir. 1994), the Fifth Circuit reached an identical conclusion while interpreting a similar worksharing agreement in the

Title VII context. There, the court held that "upon the EEOC's receipt of the complaint, the [state agency], for all legal and practical purposes, received the complaint," meaning that "once the [state agency] received [the] complaint, even if only nominally, proceedings were instituted within the meaning of [the statute]." *Id.* at 612-13. The Seventh Circuit similarly allowed an ADEA claim to proceed in light of a worksharing agreement. *See Kaimowitz v. Bd. of Trustees of the Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir. 1992) ("Because the workshar[ing] agreement provides for direct filing with the EEOC and both initiation and termination of the state's interests pursuant to a prearranged waiver, [the plaintiff] was not required to physically file his complaint with the [state agency]."). Nothing in the record before us provides any reason to reach a more restrictive result here. We therefore conclude that Schuler, having waited more than "sixty days after proceedings ha[d] been commenced under . . . State law" to file his complaint in federal court, has satisfied ADEA section 633(b)'s procedural requirements. 29 U.S.C. § 633(b).

PwC nonetheless insists that Schuler's EEOC filing was insufficient, but its arguments are unpersuasive. In support of its contention that EEOC worksharing agreements bind individual EEOC field offices rather than the Commission in general, PwC points out that both the D.C. and New York agreements were signed by the EEOC's regional directors on behalf of each local office. But so what? That the Commission conducts its affairs through local offices and officers goes without saying. Indeed, the EEOC's annual report, which lays out the agency's organizational structure, explains that "through the [Headquarters-based] Office of Field Program's State and Local Programs, *the EEOC maintains worksharing agreements* . . . with 96 state and local Fair Employment Practices Agencies (FEPAs) for the purpose

of coordinating the investigation of charges dual-filed under State and local law and Federal law, as appropriate." EEOC, FISCAL YEAR 2007 PERFORMANCE AND ACCOUNTABILITY REPORT appx. A (2007), *available at* http://www.eeoc.gov/ abouteeoc/plan/par/2007/appendixes.html#a. Accordingly, the agreements refer to the "EEOC" as the relevant party throughout their substantive provisions, not to its constituent field offices. In that sense, the worksharing agreements echo their authorizing regulation, which states that "*the Commission* may enter into agreements with state or local fair employment practices agencies." 29 C.F.R. § 1626.10(a) (emphasis added). Furthermore, it would make little sense to allow aggrieved employees to satisfy ADEA section 626(d) by submitting their EEOC charges in "any office of the Commission or to any designated representative of the Commission" across the country, *id.* § 1626.5, while simultaneously saddling them with the burden of divining which *other* EEOC offices must also receive their charges to satisfy section 633(b). These worksharing agreements are meant to ease charges through the remedial system, not to erect hurdles claimants must decipher and overcome. As the Sixth Circuit put it while discussing Title VII's analogous deferral state provision, "[a]lthough . . . state worksharing agreements are designed to allow states a 'first bite' at resolving [discrimination] cases, mechanisms created to give states such [an] opportunity must not stand in the way of the necessarily simple claims-making procedure." *Nichols v. Muskingum College*, 318 F.3d 674, 678-79 (6th Cir. 2003).

Next, PwC argues that section 1626.10(c) comes into play only *after* the EEOC actually sends a charge to the relevant state agency—something PwC says never happened here. For support, it points to *Petrelle v. Weirton Steel Corp.*, 953 F.2d 148 (4th Cir. 1991), in which the Fourth Circuit, interpreting a West Virginia EEOC worksharing agreement,

found similar "deemed received" language insufficient to satisfy section 633(b) because the charge had never actually been referred to the state agency. *Id.* at 152-53. In *Petrelle*, however, the Fourth Circuit heard the case on appeal from a decision granting a motion for a judgment notwithstanding the verdict, *id.* at 149, not from a motion to dismiss on the pleadings, as we do. Therefore, the *Petrelle* court could go beyond the pleadings and consider the trial record, which included testimony by the West Virginia Human Rights Commission's assistant director explaining that "despite the agreement's language of agency, the [state agency] requires physical receipt by it of the EEOC's referral in order to deem charges filed with . . . it." *Id.* at 152. Here, by contrast, we have no evidence outside the pleadings, and nothing in those documents implies that the DCOHR maintains a similar requirement. Nor do we see any reason to read one into the agreement; indeed, given that "*any* ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader," *Doe*, 753 F.2d at 1102, we must assume its absence. Moreover, the agreement at issue in *Petrelle* "contain[ed] no automatic waiver language which [could] be interpreted as an unconditional waiver by the state of its deferral rights under § 633(b)." 953 F.2d at 153. As discussed above, the D.C. worksharing agreement contains precisely such language.

Even if the DCOHR had to receive an actual copy of the complaint to commence proceedings, it bears repeating that Schuler explicitly told the EEOC that his "complaint should be CROSS FILED WITH THE HUMAN RIGHTS AGENCIES OF NEW YORK CITY, THE STATE OF NEW YORK, *AND WASHINGTON, D.C.*" Decl. of Harold Schuler 5 (emphasis added). PwC reads this statement as an abstract acknowledgment that the charge ought to be filed in Washington, D.C. rather than as a specific request that the

EEOC refer the charge to the DCOHR, but this is absurd. As Schuler's counsel explained at oral argument, he filed his charge in New York to ensure that PwC managers "understood what was being argued in the case" and "thought that was all right [be]cause the reg[ulation]s say you can file your charge with [the] EEOC anywhere." Oral Arg. Tr. 13. Counsel nonetheless sought to protect his client by asking the EEOC to cross-file his charge with all relevant state agencies, including the DCOHR—a request that made sense given Commission regulations empowering it to "refer all charges to any appropriate State agency . . . in order to assure that the prerequisites for private law suits, as set out in section [633(b)], are met." 29 C.F.R. § 1626.9. "It is well settled law that if the EEOC fails to refer a charge to the state charging agency, the EEOC's misfeasance is not held against the plaintiff." *Nichols*, 318 F.3d at 678; *see also Mitchell v. Mid-Continent Spring Co. of Ky.*, 466 F.2d 24, 27 (6th Cir. 1972) ("It is clear that [plaintiff] should not lose her cause of action because of the failure of EEOC to refer her complaint to a State agency."). Thus, even if the DCOHR required physical receipt of Schuler's charge—and we have no reason to believe that it does—in order to initiate proceedings over a complaint the agency has already disclaimed any intention of acting upon, Schuler cannot be held responsible for the EEOC's failure to forward the charge as he explicitly requested. This assumes, of course, that the EEOC's decision not to forward Schuler's charge to the DCOHR amounted to a bureaucratic failure in the first place. For reasons we explain below, however, we find perfectly reasonable the EEOC's decision to refer Schuler's charge only to the New York State Division of Human Rights.

PwC raises a final question about the D.C. worksharing agreement. Immediately following paragraph II.A's language designating the EEOC as the DCOHR's agent for purposes of

receiving charges (and vice versa), the agreement says: "EEOC's receipt of charges on the [DCOHR]'s behalf will *automatically initiate the proceedings of both the EEOC and the* [*DCOHR*] *for the purposes of . . . Title VII.*" D.C. Worksharing Agreement ¶ II.A (emphasis added). According to PwC, this language unambiguously demonstrates that the agreement commences proceedings only for Title VII claims, not ADEA claims. Disagreeing, Schuler points to the agreement's waiver provision, which draws no such distinction and expressly mentions the ADEA. *Id.* ¶ III.A.

The record contains no evidence at all of the contracting parties' intent because PwC chose to move for judgment on the pleadings rather than summary judgment. Absent any evidence to the contrary, it seems to us that the agreement may have singled out Title VII claims because that statute requires grievants to file with state agencies before filing with the EEOC while the ADEA allows for "concurrent rather than sequential state and federal administrative jurisdiction." *Oscar Mayer*, 441 U.S. at 757. Accordingly, the EEOC and the DCOHR may have wished to make it clear that the D.C. agency intended to waive its statutory right to proceed first. That the worksharing agreement addresses this statutory peculiarity neither limits nor otherwise affects the rest of the agreement's clear application to ADEA claims.

We reject PwC's construction of the worksharing agreement for another reason: it would effectively rewrite the ADEA's administrative prerequisites, making them traps for the unwary, poised to spring into action and deny those who may have suffered employment discrimination their right to seek redress in federal court. Indeed, the Supreme Court has announced "a guiding principle for construing the provisions of Title VII," *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397 (1982), which applies with equal force to the

ADEA: a technical reading of the statute's filing requirements is "particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Love*, 404 U.S. at 527 (holding that a Title VII claimant need not re-file a charge after termination of state proceedings); *see also Oscar Mayer*, 441 U.S. at 755 (interpreting the ADEA's state filing requirement in light of Title VII's because the two provisions are "virtually *in haec verba*"). To be sure, Schuler had a lawyer, but we interpret the statute not just for his benefit, but for all aggrieved employees. We must therefore avoid construing the statute in a way that imposes extra-textual burdens "serv[ing] no purpose other than the creation of an additional procedural technicality." *Love*, 404 U.S. at 526.

The EEOC filing requirement "is intended to promote the speedy, informal, non-judicial resolution of discrimination claims, . . . to preserve evidence and records relating to the alleged discriminatory action," *McClinton v. Ala. By-Prods. Corp.*, 743 F.2d 1483, 1485 (11th Cir. 1984), and "to give prompt notice to the employer," *Zipes*, 455 U.S. at 398. Like its Title VII analog, the ADEA's deferral state filing requirement "is intended to give state agencies a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary, resort to federal relief by victims of the discrimination." *Oscar Mayer*, 441 U.S. at 755. Because Schuler's actual filing with the EEOC and his nominal filing with the DCOHR served each of these purposes, the ADEA requires nothing more.

In sum, Schuler properly and timely filed an EEOC charge and asked the Commission to cross-file it with the DCOHR, which has entered into a contractual arrangement with the EEOC designed to "facilitate the assertion of employment rights." D.C. Worksharing Agreement ¶ II.A.

Nothing in either the agreement's text or the record before us reveals that the EEOC or the DCOHR intended to exclude a claim like Schuler's from coverage. Under these circumstances, we conclude that Schuler satisfied ADEA section 633(b)'s deferral state filing requirement.

*The New York State Division of Human Rights*

Schuler argues that even if we were to find the D.C. worksharing agreement ambiguous or otherwise inadequate, his suit may proceed on an alternate ground. Specifically, Schuler argues that he satisfied ADEA section 633(b)'s deferral state filing requirement when the EEOC cross-filed his charge with the NYSDHR, assuring him that he "need do nothing further at this time." Letter from Araujo to Schuler. PwC disagrees, pointing out that in *Murphy*—Schuler's previous and still pending case—the district court held that New York's Human Rights Law requires plaintiffs to "allege that the actual impact of the discriminatory act was felt in New York." *Murphy*, 357 F. Supp. 2d at 244. Because Schuler's alleged injury occurred in Washington, D.C., PwC argues, the NYSDHR lacks authority to "grant or seek relief from [the alleged] discriminatory practice," rendering it an inappropriate deferral state. 29 U.S.C. § 633(b). We disagree. Relying on a plain reading of both the state law and Schuler's EEOC charge, we hold that New York's Human Rights Law covers this case, thereby granting the NYSDHR jurisdiction over Schuler's charge.

Like his complaint in the district court, *see supra* at 9-10, Schuler's February 2005 EEOC charge clearly alleges a pattern and practice of discrimination resulting from PwC's mandatory retirement and promotion policies. On the charge's cover page, Schuler wrote, "The Employer, PwC, has followed and continues to follow age discriminatory

practices for promotion to partnership that favor employees younger than 40 years old and harm me and other older employees." EEOC Charge of Discrimination. In the declaration attached to the charge, Schuler stated that he lives in Virginia, that PwC is headquartered in New York City, and that he and other employees have failed to make partner because of "policies and procedures adopted and maintained by [PwC]'s Senior Partner and Chief Executive Officer Dennis Nally and the 14 other members of its Board of Partners and Principals." Decl. of Schuler 1. Schuler further asserted that PwC has promoted over 200 older employees to "Managing Director" while younger employees have become partners. *Id.* at 3.

PwC argues that Schuler never explicitly alleged that PwC's board and CEO meet in New York, or that the allegedly discriminatory policy was adopted there, but we think that a reasonable inference given Schuler's assertion that the company is headquartered in New York City. *See Shehadeh v. Chesapeake & Potomac Tel. Co. of Md.*, 595 F.2d 711, 727 (D.C. Cir. 1978) (noting that EEOC complaints "are to be construed liberally"). Thus, the precise question we face is this: does the NYHRL apply to a New York-based company's decision to adopt, maintain, and implement an allegedly discriminatory promotion policy that injures an out-of-state resident?

We begin, as we must, with the statute's text. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("[I]n any case of statutory construction, our analysis begins with 'the language of the statute.' And where the statutory language provides a clear answer, it ends there as well." (quoting *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992))). NYHRL section 296 lays out the law's substantive provisions, making it "an unlawful discriminatory

practice" for employers, licensing agencies, employment agencies, or labor organizations to discriminate against "any individual" on the basis of "age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status." N.Y. Exec. Law § 296. As PwC's counsel conceded at oral argument, this provision contains no requirement that the unlawful discriminatory impact occur in New York. *See* Oral Arg. Tr. 26 (agreeing with the Court that "there's no exception in the statute for discriminatory acts committed inside the state that affect non-residents"). Rather, the law forbids all employers in the state from engaging in discriminatory acts. Thus, absent some exception or limitation, section 296, on its face, applies to PwC's adoption, maintenance, and implementation of an allegedly discriminatory promotion policy.

Significantly, the NYHRL does include a section extending the law "to certain acts committed outside the state of New York," N.Y. Exec. Law § 298-a, but, as PwC's counsel again conceded at oral argument, neither of that provision's two subsections has any bearing on this case. The first, subsection 298-a(1), applies the law with equal force "to an act committed outside [New York] against a resident of [New York]" or against a New York corporation. *Id.* § 298-a(1). That isn't this case. The other, subsection 298-a(2) applies the law to New York residents who violate the law outside the state. *Id.* § 298-a(2). That isn't this case either. Here, Schuler alleges that a New York company has committed a discriminatory act *in* New York, namely adopting, maintaining, and implementing a retirement and promotion policy that disadvantages a class of employees on the basis of age. Thus, nothing in the statute's plain text removes Schuler's charge from the NYHRL's reach or the NYSDHR's jurisdiction.

PwC nonetheless urges us to set the plain terms of the statute aside and follow a string of New York federal district court cases construing the NYHRL to include an in-state impact requirement. *See, e.g.*, *Pearce v. Manhattan Ensemble Theater, Inc.*, No. 06 Civ. 1535 (KMW), 2007 WL 707068, at *7 (S.D.N.Y. Mar. 6, 2007) (recognizing a split of authority regarding whether the NYHRL, like the New York City Human Rights Law, includes an in-state "impact requirement" and holding that it does); *Lucas v. Pathfinder's Personnel, Inc.*, No. 01 Civ. 2252 (BSJ), 2002 WL 986641, at *2 (S.D.N.Y. May 13, 2002) ("[T]he fact that the decision to terminate Plaintiff was made in New York State is not sufficient to establish a violation of the NYSHRL."); *Duffy v. Drake Beam Morin*, No. 96 Civ. 5606 (MBM), 1998 WL 252063, at *12 (S.D.N.Y. May 19, 1998) ("[T]he State Human Rights Law affords no remedy to a non-New York resident who suffers discrimination outside New York State."). For his part, Schuler responds with his own list of Southern District of New York cases holding "there is no New York authority to suggest that the impact of a discriminatory act must be felt within New York for the NYHRL to apply." *Hart v. Dresdner Kleinwort Wasserstein Sec., LLC*, No. 06 Civ. 0134 (DAB), 2006 WL 2356157, at *8 (S.D.N.Y. Aug. 9, 2006); *see also, e.g.*, *Tebbenhoff v. Elec. Data Sys. Corp.*, No. 02 Civ. 2932 (TPG), 2005 WL 3182952, at *5 (S.D.N.Y. Nov. 29, 2005) ("The fact that a decision to discriminatorily terminate a non-resident was made in New York can alone suffice to state a claim under NY[]HRL."); *Torrico v. IBM Corp.*, 319 F. Supp. 2d 390, 399 n.5 (S.D.N.Y. 2004) (disagreeing with *Lucas*, 2002 WL 986641, and rejecting an in-state impact requirement).

Although none of these federal district court decisions binds us, we think it worth noting that the decisions PwC cites

are unpersuasive. Take for example *Duffy v. Drake Beam Morin*, the case cited by most of the other decisions on PwC's side of the ledger. There, the court held that "the State Human Rights Law affords no remedy to a non-New York resident who *suffers discrimination outside New York State*." 1998 WL 252063, at \*12 (emphasis added). In reaching this conclusion, the court cites two cases, neither of which supports its holding.

The first case, *Iwankow v. Mobil Corp.*, 541 N.Y.S.2d 428 (App. Div. 1989), is the only New York state court decision addressing the NYHRL's extraterritorial scope. There, the Appellate Division held, "absent an allegation that a discriminatory act was committed in New York or that a New York State resident was discriminated against, New York's courts have no subject matter jurisdiction over the alleged wrong." *Id.* at 429. Thus, contrary to the *Duffy* court's interpretation, *Iwankow* says nothing about where plaintiffs may "suffer[] discrimination," *Duffy*, 1998 WL 252063, at \*12; it merely requires them to allege an in-state discriminatory act. In *Iwankow*, "[t]he only jurisdictional nexus asserted in the complaint, apart from the fact that defendants [we]re domestic corporations, [was] that plaintiff's termination was part of a world-wide reduction in force which was decided upon at corporate headquarters in New York." 541 N.Y.S.2d at 429. The court dismissed that claim because the plaintiff had failed to "allege that the decision to implement this reduction in an age-discriminatory manner originated at corporate headquarters." *Id.* Schuler, of course, alleges just that regarding PwC's promotion policy. Like *Iwankow*, the second case *Duffy* cites, *Beckett v. Prudential Insurance Co. of America*, 893 F. Supp. 234 (S.D.N.Y. 1995), holds that "[t]he NYHRL does not provide a *non-resident* with a private cause of action for discriminatory conduct committed *outside* of New York by a *New York*

corporation." *Id.* at 238. And also like *Iwankow*, *Beckett* provides no support for *Duffy*'s broad holding that "a non-New York resident who *suffers discrimination outside New York State*" may find no recourse in the NYHRL. *Duffy*, 1998 WL 252063, at *12 (emphasis added); *see also Rice v. Wartsila NSD Power Dev., Inc.*, 183 Fed. App'x. 147, 148 (2d Cir. 2006) (unpublished summary order) (finding the NYHRL inapplicable when plaintiff failed to allege a discriminatory act occurring in New York), *aff'g Rice v. Scudder Kemper Invs., Inc.*, No. 01 Civ. 7078 (RLC), 2003 WL 21961010 (S.D.N.Y. Aug. 14, 2003). More to the point, given that Schuler has alleged discriminatory conduct committed *in* New York, neither *Iwankow* nor *Beckett* has any bearing on this case.

In sum, the New York Human Rights Law, by its terms, applies to this case, and "no New York authority . . . suggest[s] that the impact of a discriminatory act must be felt within New York for the NYHRL to apply." *Hart*, 2006 WL 2356157, at *8. Absent a contrary interpretation by the New York Court of Appeals or the Second Circuit, we conclude that in addition to satisfying ADEA section 633(b)'s deferral state filing requirement via the D.C. worksharing agreement, Schuler adequately sought a state administrative remedy in New York by having his charge cross-filed with the NYSDHR.

## III.

A final question remains: did Schuler have to file a new EEOC charge after PwC's failure to promote him in July 2005, or was his February 2005 charge sufficient? Schuler's complaint alleges that PwC's board declined to elevate him to partner on two occasions—July 2004 and July 2005—and he seeks damages flowing from each decision. Schuler's February 2005 EEOC charge, however, made no mention of

the July 2005 nonpromotion for an obvious reason: Schuler filed it four months before that decision occurred. Finding the two alleged failures to promote to be "discrete incidents of discrimination," *Schuler*, 457 F. Supp. 2d at 4, the district court dismissed the July 2005 "claim" as untimely because Schuler failed to file a new charge based on the July 2005 decision. *Id.* at 5; *see also* 29 U.S.C. § 626(d)(2) (requiring a plaintiff to file an EEOC charge "within 300 days after the alleged unlawful practice occurred" if section 633(b) applies). According to PwC, this failure provides a separate ground for affirming the district court's dismissal of Schuler's July 2005 "claim." Schuler disagrees, contending that his pattern and practice claim "necessarily contemplates continued annual violations of the ADEA," Appellant's Opening Br. 22, making it pointless to require him to file a new EEOC charge with each predictable application of the same discriminatory policy.

Interesting as this question may be, we need not decide it because, given the posture of this case, it is of no practical significance. As described above, Schuler brought a single federal claim—a class-action pattern or practice ADEA claim arising out of PwC's mandatory retirement and promotion policy—not two discrete nonpromotion charges. *See supra* at 9-10. Schuler seeks damages flowing from the first application of PwC's allegedly discriminatory policy through to the present. *See* Compl. 16 (seeking an "[a]ward of damages in an amount to be determined by the jury, for each year commencing on July 1, 1999, and each year thereafter"). As Schuler's counsel explained at oral argument, should Schuler ultimately prevail on his federal claim, he will be entitled to compensation dating back to the original injury. *See* Oral Arg. Tr. 14-15; *see also* 29 U.S.C. § 626(c)(2) (allowing ADEA plaintiffs to bring "action[s] for recovery of amounts owing as a result of a violation of" the statute).

Accordingly, because Schuler filed a timely and procedurally adequate EEOC charge before initiating his federal suit, *see supra* Part II, and because his complaint seeks damages flowing from the alleged violation onward, we see no reason to consider whether an additional EEOC charge was required to support the effectively irrelevant July 2005 nonpromotion decision.

## IV.

Because it is quite possible that Schuler can prove a "set of facts in support of his claim which would entitle him to relief," *Gilvin v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001), we reverse the dismissal of his ADEA claim for failure to satisfy the statute's administrative prerequisites and remand the case for further proceedings consistent with this opinion. We leave it to the district court to decide whether to exercise supplemental jurisdiction over Schuler's DCHRA claim pursuant to 28 U.S.C. § 1367(a).

*So ordered.*