RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0037P (6th Cir.)
File Name: 03a0037p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————



BETSY L. NICHOLS,
      *Plaintiff-Appellant/*
          *Cross-Appellee,*

            *v.*

MUSKINGUM COLLEGE,
      *Defendant-Appellee/*
          *Cross-Appellant.*

Nos. 01-3436/3497

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-01093—George C. Smith, District Judge.

Argued: September 18, 2002

Decided and Filed: February 3, 2003

Before: MARTIN, Chief Circuit Judge; MOORE, Circuit
Judge; WISEMAN, Senior District Judge.

———————————

*The Honorable Thomas A. Wiseman, Jr., Senior United States District Judge for the Middle District of Tennessee, sitting by designation.

———————

**COUNSEL**

———————

**ARGUED:** Michael N. Budelsky, SIRKIN, PINALES, MEZIBOV & SCHWARTZ, Cincinnati, Ohio, for Appellant. Dennis D. Grant, ARTER & HADDEN, Columbus, Ohio, for Appellee. **ON BRIEF:** Michael N. Budelsky, Marc D. Mezibov, SIRKIN, PINALES, MEZIBOV & SCHWARTZ, Cincinnati, Ohio, for Appellant. Dennis D. Grant, Nancy J. Manougian, ARTER & HADDEN, Columbus, Ohio, for Appellee. Jennifer S. Goldstein, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.

———————

**OPINION**

———————

WISEMAN, Senior District Judge. Plaintiff-Appellant Dr. Betsy Nichols ("Nichols") appeals the district court's dismissal for lack of subject matter jurisdiction of her Title VII employment discrimination claim. The district court found that Nichols failed to timely file a charge with the Equal Employment Opportunity Commission ("EEOC"). Defendant-Appellee Muskingum College ("Muskingum") cross appeals the district court's denial of its motion for attorney's fees. For the following reasons, we REVERSE the district court's decision granting Muskingum's motion to dismiss and REMAND for consideration upon the merits of the claim.

## I. Facts

Nichols was an assistant professor at Muskingum, located in New Concord, Ohio. Her contract had been renewed annually three times. On August 6, 1997, Muskingum notified Nichols that it would not renew her contract for the 1998-99 academic year. On May 28, 1998 – 295 days after she

received the notification of non-renewal – Nichols visited the Ohio Civil Rights Commission ("OCRC") and spoke with an intake officer at the state agency, claiming that she was not re-hired because she did not conform to the college's accepted stereotype of female faculty. The OCRC officer asked Nichols a number of questions about her complaint and assisted her in the completion of her charge. Nichols handwrote the charge on OCRC stationery, signed it, and checked the box next to the signature line labeled "I also want this charge filed with the EEOC." The charge was then forwarded to the EEOC.

On July 30, 1998, the EEOC issued Nichols a right to sue letter, and Nichols filed suit on October 27, 1998. Muskingum responded by filing a motion to dismiss, arguing that because no charge was filed with the OCRC under Ohio law, the 300-day limitations period was inapplicable, and Nichols' charge was therefore untimely. In response, Nichols argued that her actions at the OCRC office constituted "initially instituting proceedings" with the state agency, entitling her to a 300-day limitations period.

The district court initially denied Muskingum's motion, stating that although Title VII "does not define the term 'instituted,'" that term "is broad enough to encompass plaintiff's initial presentation of her charge to OCRC personnel at the OCRC offices." Muskingum filed a motion for reconsideration, arguing that the district court misapplied the statute by omitting the word "proceeding" from its citation to Title VII. Muskingum argued that it is not enough for a complainant to simply present a charge; rather, the state agency has to consider the charge as filed in order to satisfy the requirement to institute proceedings. The district court granted Muskingum's motion. In its opinion, the court concluded that although the OCRC personnel helped Nichols process her charge, that charge was filed only with the EEOC and not with the OCRC, and thus proceedings were not instituted with the OCRC. Accordingly, the district court found that Nichols failed to file a timely EEOC charge and

thus granted Muskingum's motion to dismiss for lack of subject matter jurisdiction.

## II.    Standard of Review

This Court reviews a district court's decision to grant a motion to dismiss for lack of subject matter jurisdiction *de novo*. *See Joelson v. United States,* 86 F.3d 1413, 1416 (6th Cir. 1996). Factual findings made by the district court in resolving a motion to dismiss, however, are reviewed only for clear error. *See Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999) (quoting *Gafford v. Gen. Elec. Co.,* 997 F. 2d 150, 161 (6th Cir. 1993)).

When a defendant moves to dismiss on grounds of lack of subject matter jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990). In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits. *Rogers v. Stratton Industries*, 798 F.2d 913, 916 (6th Cir. 1986). However, where a defendant argues that the plaintiff has not alleged sufficient facts in her compliant to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true. *Jones,* 175 F.3d at 413.

## III.    Analysis

### A.    Subject Matter Jurisdiction

The district court wrongly dismissed Nichols' complaint for lack of subject matter jurisdiction. Nichols satisfied the administrative prerequisites for bringing an action in federal court under Title VII. Her actions at the OCRC constituted initially instituting proceedings with the OCRC, and thus her filing with the EEOC was timely, giving the district court subject matter jurisdiction to decide her claim on the merits.

### B.    Attorney Fees

The district court denied Muskingum's motion for attorney fees without explanation. This Court reviews a decision regarding the award of attorney's fees for an abuse of discretion. *See Secretary Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985).

Title VII permits the award of attorney fees to the prevailing party in a Title VII action:

> In any action or proceeding under this title the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5(k).

Because we reverse the district court's decision dismissing the complaint for lack of subject matter jurisdiction, Muskingum is no longer the prevailing party and its motion for attorney's fees is not ripe.

### IV.    Conclusion

Based upon the foregoing analysis, the judgment and order of the district court concerning Muskingum's Motion to Dismiss is REVERSED and REMANDED for consideration upon the merits of the claim. As a result, Muskingum's appeal of the district court's denial of its motion for attorney's fees is not ripe, and the decision of the district court denying attorney's fees is AFFIRMED on that basis.

charge with both the EEOC and the state agency. Nichols does not concede either of these issues in this case. *Id.*

In this case, the state limitations period has driven the agency procedures. These procedures should not in turn be permitted to shorten the federal filing period. The Supreme Court has stated that it is irrelevant, for purposes of Title VII's limitations period, whether a state agency deems an aggrieved party's submission untimely under state law. *See Oscar Mayer & Co.*, 441 U.S. at 760 (1979). Under the circumstances of this case, for it to be truly irrelevant whether the state agency deems Nichols' submission untimely, it also must be irrelevant that the state agency declined to act on her charges because it was brought outside the statute of limitations.

In *Griffin v. Air Prods. and Chemicals, Inc.*, 883 F.2d 940 (11th Cir. 1989), the Eleventh Circuit found that where a state fair employment practices agency waived its right to exclusively process a claim under its worksharing agreement with the EEOC, the claim was "deemed to be filed" with the EEOC on the date of the waiver, even where the state commission failed to expressly communicate a referral before day 300. *Id.* at 943 ("We conclude that the EEOC-FCHR worksharing agreement created an instantaneous 'constructive termination' and that the district court did not abuse its discretion in finding that Griffin filed a timely EEOC claim."). Adopting this approach, we find that Nichols' May 28,1998, charge with the OCRC was constructively terminated pursuant to the worksharing agreement and should be deemed filed with the EEOC on that same date. Consistent with federal law, state law, EEOC regulations, and the OCRC regulations, the legal effect of Nichols' interaction with the OCRC was to institute proceedings with that commission 295 days after Muskingum College allegedly discriminated against her.

Before a plaintiff alleging discrimination under Title VII can bring suit in federal court, she must satisfy two administrative prerequisites: "(1) by filing timely charges of employment discrimination with the EEOC, and (2) receiving and acting upon the EEOC's statutory notices of the right to sue." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989)(citing 42 U.S.C. §2000e-(f)(1); *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973)). Pursuant to 42 U.S.C. § 2000e-5(e)(1), a charge is timely when the aggrieved filed with the EEOC within 180 days after the allegedly unlawful practice occurred. An exception lies for charges initially instituted with a state agency:

[I]n a case of unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a state or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier. . .

*Id.* The central issue in this case is whether this provision is properly understood to provide that an individual who has presented her written and signed charge to the state agency has "initially instituted proceedings" with that agency, regardless of whether the state agency takes further action on the claim.

Because the OCRC is an authorized state agency under 42 U.S.C. §2000e-5(e)(1), the determination turns on whether Nichols initiated proceedings with the OCRC when she presented her claim to an OCRC intake officer. Nichols and the EEOC argue that Nichols' actions were sufficient to trigger the 300-day filing period under 42 U.S.C. §2000e-5(e)(1). Muskingum asserts that the EEOC and Nichols are

improperly construing Title VII statutory language, specifically, that the language of Title VII is not ambiguous and the EEOC may not confer broader rights on claimants or more prejudicial rules on charged parties than those enacted by Congress.

It is well settled law that if the EEOC fails to refer a charge to the state charging agency, the EEOC's misfeasance is not held against the plaintiff. *See Toombs v. Greer-Smyrna, Inc.*, 529 F. Supp. 497, 503 (M.D. Tenn. 1982)("When a complainant has done all that the Supreme Court has stated is required of her in filing a charge with the EEOC, she should not be penalized because the EEOC ignores its own regulations and fails to refer the charge to the appropriate state agency."); *Mitchell v. Mid-Continent Spring Co.,* 466 F.2d 24, 27 (6th Cir. 1972) ("It is clear that (plaintiff) should not lose her cause of action because of the failure of the EEOC to refer her complaint to the state agency."). *Accord Roberts v. Arizona Board of Regents*, 661 F.2d 796,799 (9th Cir 1981)("We are . . . unwilling to allow the EEOC's violation of its own procedural regulations to redound to the (plaintiff's) detriment . . . To require a plaintiff . . . to protect herself against the EEOC's possible violation of its own regulations by simultaneously filing a charge with the appropriate state agency would be wholly inconsistent with the rationale of *Love*")(citing to *Love v. Pullman Co.*, 404 U.S. 522 (1972)); *White v. Dallas Independent School District,* 581 F.2d 556 (5th Cir. 1978). In this case, we have the bizarre result where the state charging agency has failed to refer the charge to itself for purposes of state filing. Following the reasoning in this line of cases, we find the misfeasance, this time by the state charging agency, should not be held against the Plaintiff. The spirit and focus of Title VII is to provide a venue of just review for laypersons who have suffered alleged discrimination whether they be pullman car operators or college professors. *See EEOC v. Commercial Office Prods. Co.,* 486 U.S. 107, 124 (1988). Although the state worksharing agreements are designed to allow states a "first bite" at resolving such cases, mechanisms created to

When this Court reads 42 U.S.C. §2000e-5(c) in conjunction with the Supreme Court's decision in *Love v. Pullman Co.*, it is compelled to find that Nichols plainly "initially instituted proceedings" with the OCRC and so satisfied the requirements for the 300-day limitations period in 42 U.S.C. §2000e-5(e)(1). *Love,* 4 U.S. at 525 (1972). In *Love,* the Court held that even where the statute explicitly required a statement sent by registered mail, "[n]othing in the language implies that a state proceeding may not be commenced by an oral complaint; the statute guards against state proceedings that are difficult to commence, not against ones that are easily begun." *Id*. at 525 n. 4.

The district court did not undertake an analysis of the above case law. Instead, the court relied on the fact that Nichols' charge form includes the words "EEOC only."[3] The court noted that it was unclear from the record how the words came to appear upon the form. At the same time, however, the court stated that the presence of the words indicated that Nichols did not file a proceeding with the state agency. In essence, the district court construed the evidence against Nichols. The district court's factual inference is not appropriate because even the evidence seems to indicate that it was the intake officer who wrote the words on the form, presumably because the OCRC does not investigate untimely state law charges.

The district court also relied on *Jones v. Memphis Bd. of Educ.*, No. 98-5010, 1998 WL 898829 (6th Cir. Dec. 16, 1998)(unpublished opinion). That case arose under different factual circumstances. In *Jones*, the plaintiff explicitly stated in her complaint that she did not file with the appropriate state or local agency and she did not check the box to file the

---

[3]At the top of the draft complaint is a handwritten notation that says "EEOC only." A typewritten draft was subsequently prepared, with the text identical to that in handwritten version, including the words "EEOC only" at the top.

effected within 300 days from the date of the alleged violation.

29 C.F.R. §1601.13(b)(1). This clarifies that "to institute proceedings" for the purpose of invoking the 300-day filing period under 42 U.S.C. §2000e-5(e)(1), a charging party need only present a charge to the OCRC and request that the charge be presented to the EEOC. If, in scenarios like the present case, the OCRC immediately waives jurisdiction over the charge, and the filing is within 300 days of the incident, the charge will be timely filed with the EEOC.

The plain language of 42 U.S.C. §2000e-5(e)(1) requires simply that "proceedings" be "initially instituted" with a state agency. The definition of "instituted" is to be found in section §2000(e)(5)(c), which provides as follows:

If any requirement for the commencement of [State] proceedings is imposed by a State . . . authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State... authority.

§2000(e)(5)(c) is also clarified by the case law within which it is interpreted. The imposition of strict procedural technicalities "are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Love,* 4 U.S. at 525 n.4. [2]

---

[2] Muskingum's brief asserts that because Nichols had a lawyer, her inability to follow the technical procedures correctly is inexcusable. The applicability of the Supreme Court's ruling in *Love* to a particular case is not dependent upon whether the plaintiff has been represented by legal counsel. *See Heiniger v. City of Phoenix*, 625 F.2d 842, 845 (9th Cir. 1980)(agreeing with *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970)).

give states such opportunity must not stand in the way of the necessarily simple claims-making procedure. *See* 42 U.S.C. §2000e-5(c). The Ninth Circuit has explained the goal of the workshare agreements as follows:

Prohibiting *any* remedy to claimants who file discrimination complaints with an appropriate state or federal agency within the 300-day deadline is entirely at odds with the purpose of the worksharing agreement [between Nevada's FEPA and the EEOC] and with Title VII. These agreements are intended to eliminate duplication of effort between the agencies and to provide an efficient procedure for claimants to seek redress for their grievances. In enacting Title VII, Congress also intended the statute's procedural requirements to be liberally construed in order to remedy gender-based discrimination in the workplace and to preserve a claimant's federal remedies in discrimination suits.

*Laquaglia v. Rio Hotel & Casino, Inc.,* 186 F.3d 1172, 1177 (9th Cir. 1999)(citations omitted).

Nichols claims she wanted to file with both the state and federal agencies, and indeed the workshare agreement dictates that OCRC officials must encourage claimants to file with both.[1] The inconsistent markings on the OCRC prepared documents which Muskingum argues show Nichols intended to file only with the federal agency, in fact show only that the OCRC has failed to enact a simple claims-making process of the sort envisioned by the Court in *Love,* 4 U.S. at 525 n.4,

---

[1] The Worksharing Agreement II (C) includes the following relevant provision which shows its purpose of promoting filing of claims with both the EEOC and the OCRC:

Each Agency will inform individuals of their rights to file charges with the other Agency and or assist any person alleging employment discrimination to draft a charge in a manner which will satisfy the requirements of both agencies to the extent of their common jurisdiction.

and expressly adopted by the Sixth Circuit in *Ferguson v. Kroger Co.,* 545 F.2d 1034, 1036 (6th Cir. 1976) (incorporating *Love* by reference).

As noted by both parties, an aggrieved person does not necessarily have to file a state charge within the state statute of limitations period to preserve the EEOC 300-day filing period. *Mohasco Corp. v. Silver,* 447 U.S. 807, 817 n.19 (1980); *see, e.g., Jones v. Airco Carbide Chemical Co.*, 691 F.2d 1200, 1202-03 (6th Cir. 1982). Federal courts have uniformly held that even an untimely state filing can give rise to the 300-day federal filing period. *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 760 (1979) (holding that "even if a state were to make timeliness a precondition for commencement, rather than follow the more typical pattern of making untimeliness an affirmative defense, a state proceeding will be deemed commenced" for purposes of Title VII).

It is difficult to reconcile this line of cases with the district court's decision to limit Nichols' claim because of the Ohio statute of limitations and, in particular, the resulting agency procedures. Nichols appears to have met every prerequisite under federal law to assert her claim. She submitted a written and signed statement of facts to the state agency. *See* 42 U.S.C. § 2000e-5(c). In accordance with the Ohio limitations period, however, the OCRC apparently does not treat a complaint received more than six months after an alleged incident as a charge filed with the OCRC. As a result, complainants in Ohio are effectively limited to the state statute of limitations period. This result is at odds with the cases that deem irrelevant state statutes of limitations in determining entitlement to the 300-day filing period. *See Commercial Office Prods.*, 486 U.S. at 123-124.

Muskingum urges, and the district court held, that to initially institute a proceeding, an aggrieved party must not only submit a charge to a state agency, but the state agency must accept and characterize the submission as a filed charge.

It is clear from the record that the OCRC intake clerk simply followed the agency procedures, specifically those outlined in the worksharing agreement for charges deemed untimely under state law, when she did not establish an OCRC case number for Nichols' complaint. The OCRC Regional Director signed a charge transmittal form, dated May 28, 1998, in which he checked the box entitled "706 Agency waives [the right to initial processing of the charge]." The simple fact that the state agency waived its right to process the charge under state law should not affect Nichols' rights under federal law.

29 C.F.R. §1601.13(b)(1) states that a charge is deemed timely filed with the EEOC if "a written and signed statement of facts upon which the charge is based was sent to the FEP agency by registered mail or was otherwise received by the FEP agency" within 300 days from the alleged violation. In its amicus brief, the EEOC argues that when the OCRC officer accepted Nichols' charge, it was "otherwise received by the FEP agency." The EEOC's interpretation of this requirement is entitled to great deference. *Commercial Office Prods.,* 486 U.S. at 115 (citing to *Oscar Mayer & Co.*, 441 U.S. at 761)("[T]he EEOC's interpretation of ambiguous language need only be reasonable to be entitled to deference."); *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 621 (6th Cir. 1983). EEOC regulations explain the requirements for dual filing as follows:

When a charge is initially presented to an FEP agency and the charging party requests that the charge be presented to the Commission, the charge will be deemed to be filed with the Commission upon the expiration of 60 (or where appropriate, 120) days after a written and signed statement of fact upon which the charge is based was sent to the FEP agency by registered mail or was otherwise received by the FEP agency, or upon the termination of FEP agency proceedings, or upon waiver of the FEP agency's right to exclusively process the charge, whichever is earliest. Such filing is timely if