# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued December 11, 2014        Decided July 24, 2015

No. 13-7181

MATTHEW MAGGIO,
APPELLANT

v.

WISCONSIN AVENUE PSYCHIATRIC CENTER, INC,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-01255)

---

*Arinderjit Dhali* argued the cause and filed the briefs for appellant.

*Alan S. Block* argued the cause for appellee. With him on the brief was *Andrew Butz*.

Before: ROGERS, *Circuit Judge*, and SENTELLE and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

Dissenting opinion filed by *Circuit Judge* ROGERS.

RANDOLPH, *Senior Circuit Judge*: The issue in this appeal is whether, as District Judge Lamberth ruled, 42 U.S.C. § 2000e-5(f)(1) barred Matthew Maggio's civil action alleging discrimination because he brought it too late.

The dates matter so we will give them.  On May 11, 2012, Maggio completed a "Charge of Discrimination" and had it submitted to the Washington, D.C. office of the U.S. Equal Employment Opportunity Commission ("EEOC").  His charge, contained on the EEOC's Form 5, alleged that in December 2011 Maggio's employer fired him because he was male.  On Form 5, Maggio swore that his statements were true and listed his address as "3032 Rodman Street, NW, Apt. 35, Washington, DC 20008."  At the time he was not living at that address.  A month earlier he had moved to South Carolina.

On November 26, 2012, the EEOC mailed a right-to-sue notice to Maggio at his Rodman Street address.  Under 42 U.S.C. § 2000e-5(f)(1), if a complainant decides to sue his employer, he must bring the action "within ninety days after the giving" of the notice.  *See also Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 (1984) (per curiam).  The EEOC's notice so informed Maggio and stated that if he did not bring a civil action within ninety days his "right to sue based on this charge will be lost."  According to Maggio, he never received the notice, doubtless because he was then living in South Carolina. (No evidence indicates that Maggio left a forwarding address with the post office after he vacated his Rodman Street apartment in April 2012.)

Although by law Maggio could bring an action if the EEOC had not resolved his discrimination charge within 180 days of his May 2012 filing, *see* 42 U.S.C. § 2000e-5(f)(1), it was not until June 2013 that Maggio's attorney bothered to call the EEOC to inquire about his client's case.  At the attorney's

request, the EEOC mailed him a copy of the November 2012 right-to-sue notice. On June 21, 2013, Maggio filed his complaint against his former employer in D.C. Superior Court. The defendant removed the case to federal district court.

Maggio's lawsuit began far more than ninety days after the EEOC mailed the right-to-sue notice to his Rodman Street address.[1] Maggio never informed the agency that he was living in South Carolina. Thus, Maggio violated his duty to notify the EEOC "of any change in address and . . . any prolonged absence from that current address so that he or she can be located when necessary during the Commission's consideration of the charge." 29 C.F.R. § 1601.7(b).[2] Maggio acknowledged this duty when signing Form 5, in which he declared that he "will

[1] When the EEOC mails a right-to-sue notice, the presumptive day of receipt is three-to-five days after issuance and mailing. *Baldwin*, 466 U.S. at 148 n.1; *Cook v. Providence Hosp.*, 820 F.2d 176, 179 n.3 (6th Cir. 1987). Maggio never argues that the ninety-day limitations period did not begin until after he received actual notice. Other circuits have rejected such an argument, noting that "when plaintiffs fail to receive notice through their own fault, the 'actual-notice' rule does not apply." *Day v. Lincoln Ins. Agency, Inc.*, 1 F. App'x 521, 523 (7th Cir. 2001) (per curiam) (unpublished); *see also St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1317 (7th Cir. 1984); *Hunter v. Stephenson Roofing Inc.*, 790 F.2d 472, 474-75 (6th Cir. 1986).

[2] In order to avoid the conclusion that he supplied – under oath – a false address on EEOC Form 5, Maggio's brief states that when he moved out of D.C. in April 2012 he had not yet decided to reside permanently in South Carolina. But the form does not ask for a permanent address; it asks for a "Street Address" and the "City, State and ZIP Code," and advises the complainant of his duty to inform the EEOC if he changes his address. In any event, Maggio's amended complaint states that he was "residing" in South Carolina "from April 2, 2012 . . . to the present."

advise the agencies if [he] change[d] [his] address or phone number."

Maggio thinks "equitable tolling" should relieve him of the consequence of his failure to comply with the ninety-day rule. Although he apparently does not realize it, his argument calls on the court to engage in statutory interpretation of 42 U.S.C. § 2000e-5(f)(1). "Equitable tolling" is not some free floating doctrine allowing the courts to override the will of Congress. What matters is congressional intent, as we explained in *3M Co. (Minnesota Mining and Manufacturing) v. Browner*, 17 F.3d 1453, 1461 (D.C. Cir. 1994). The critical question is whether Congress meant to allow courts to toll the statutory limitations period. The answer to that question depends on "whether a particular basis for suspending the running of the statute of limitations had received judicial recognition when the statute became law." *Nat'l Ass'n of Mfrs. v. NLRB*, 717 F.3d 947, 961 (D.C. Cir. 2013);[3] *see* Adam Bain & Ugo Colella, *Interpreting Federal Statutes of Limitations*, 37 CREIGHTON L. REV. 493, 502-03 (2004). If by then the judiciary had generally recognized it, a fair inference would be that Congress intended to permit the tolling of the statutory limitation in similar circumstances. If not, the courts cannot excuse a litigant's filing after the statutory deadline.

Maggio's position is that he is entitled to "equitable tolling" because he thought the EEOC would send its right-to-sue notice

---

[3] *American Meat Institute v. U.S. Department of Agriculture*, 760 F.3d 18, 22-23 (D.C. Cir. 2014) (en banc), overruled only the statement in footnote 18 of *National Association of Manufacturers* describing the holding in *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 651 (1985). *Zauderer* has nothing to do with this case.

to his attorney, and the agency did not.[4]  Was that a generally recognized basis for tolling a limitations period in 1964 when Congress enacted this statute?  Neither party to this case has addressed the question.  Although we very much doubt that any such "equitable tolling" was widely recognized in 1964, we will not undertake to research the issue on our own.  We will not do so because we agree with the many decisions of other courts of appeals refusing to toll the running of the ninety days in circumstances like Maggio's.  These decisions hold that when a complainant fails to receive a right-to-sue notice because he gave the EEOC an incorrect address or because he neglected to inform the EEOC when he moved, the complainant is at fault and he is not entitled to equitable tolling.  *See, e.g.*, *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 120-21 (1st Cir. 2009); *Pearison v. Pinkerton's Inc.*, 90 F. App'x 811, 813 (6th Cir. 2004) (per curiam) (unpublished); *Day*, 1 F. App'x at

---

[4] Maggio's EEOC Form 5 listed, beneath his own name, "c/o A.J. Dhali, Esq" along with Mr. Dhali's address.

On May 11, 2012, Maggio also filed a claim of discrimination with the District of Columbia Office of Human Rights.  On the D.C. agency's form he again listed his address as Rodman Street in Washington, although he was then living in South Carolina.  Maggio withdrew his D.C. claim in short order.

Maggio's brief and his reply brief assert that he orally requested an individual in the D.C. Office to communicate only with his attorney.  Why this amounts to informing the EEOC of his request is a red herring we need not pursue.  Maggio never asserted this as fact in the district court or supplied evidentiary support for it.  Judge Lamberth's opinion thus stated correctly:  "[A]t no time did Maggio direct these agencies [the D.C. Office or the EEOC] to solely communicate – or even dually communicate – with his counsel." *Maggio v. Wis. Ave. Psychiatric Ctr., Inc.*, 987 F. Supp. 2d 38, 42 (D.D.C. 2013).

523; *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 385 (9th Cir. 1997); *Hill v. John Chezik Imps.*, 869 F.2d 1122, 1124 (8th Cir. 1989); *Hunter*, 790 F.2d at 475; *St. Louis v. Alverno Coll.*, 744 F.2d at 1316-17; *see also Dyson v. District of Columbia*, 710 F.3d 415, 422 (D.C. Cir. 2013); *Tolling of the Time Period for Bringing Title VII Action*, 13 A.L.R. Fed. 2d 633 (2006), § 23 (collecting cases).[5]

---

[5] Neither Maggio nor his attorney asked the EEOC to send the notice to the attorney.  Maggio cites no case law in support of his argument that agencies are required to communicate with counsel absent an express request that they do so.  Other courts have "explicitly rejected the argument that the EEOC must send a copy of the right to sue notice to a plaintiff's attorney upon request," and Maggio does not press this argument before us.  *Hopkins v. United Parcel Serv.*, 221 F.3d 1334, 2000 WL 923458 at *5 (6th Cir. 2000) (unpublished); *see also Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850-51 (7th Cir. 2001); *Ball v. Abbott Adver., Inc.*, 864 F.2d 419, 421(6th Cir. 1988).

The cases Maggio and our dissenting colleague mainly rely on – *Coleman v. Talbot County Detention Center*, 242 F. App'x 72 (4th Cir. 2007) (per curiam) (unpublished) and *Ryczek v. Guest Services, Inc.*, 877 F. Supp. 754 (D.D.C. 1995) – are not to the contrary.  In *Coleman*, plaintiff's counsel "explicitly requested that copies of all correspondence be forwarded to [counsel,]" and counsel both wrote and telephoned the EEOC seeking the right to sue letter.  *Coleman*, 242 F. App'x at 73.  In *Ryczek*, the plaintiff provided a declaration from an EEOC employee admitting that the right to sue letter was mistakenly sent to a temporary address of the plaintiff and not to the permanent one on file with the EEOC.  *Ryczek*, 877 F. Supp. at 757-58.  In contrast, neither Maggio nor his counsel ever informed the EEOC that it should communicate with counsel directly.

In the words of a maxim of equity, Maggio came into court without "clean hands."[6]

*Affirmed.*

---

[6] We have considered and rejected Maggio's other arguments.

ROGERS, *Circuit Judge*, dissenting: Today the court holds that whenever a complainant fails to update his address with the Equal Employment Opportunity Commission ("EEOC") and therefore fails to receive a mailed right-to-sue notice, the complainant is not entitled to equitable tolling regardless of what other measures the complainant took to ensure receipt of the notice. This is not the law. A complainant, like Matthew Maggio, is entitled to equitable tolling if the record "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation and internal quotation marks omitted); *see Dyson v. District of Columbia*, 710 F.3d 415, 421 (D.C. Cir. 2013). Here, the record shows that during a time of personal upheaval, when his permanent mailing address was uncertain, Maggio took reasonable steps to direct the EEOC to send his right-to-sue notice to his attorney. The EEOC failed to follow his instructions. Neither this court's precedent nor that cited by the court today require more. Because Maggio exercised reasonable diligence and circumstances beyond his control prevented his timely filing of his complaint, he is entitled to receive the benefit of equitable tolling, *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Gordon v. Nat'l Youth Work Alliance*, 675 F.2d 356, 360 (D.C. Cir. 1982), and, accordingly, I respectfully dissent.

## I.

Title VII encourages the informal resolution of employment discrimination disputes by requiring complainants to file charges first with the EEOC or the appropriate state or local agency before proceeding to federal court. 42 U.S.C. §§ 2000e-5(e)(1), (f)(1); *see Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 368 (1977); *Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336, 1340, 1346–47 (D.C. Cir. 1999). The EEOC coordinates with state and local agencies, like the D.C. Office of Human

Rights ("OHR"), to streamline the processing and investigation of charges. *See* 42 U.S.C. § 2000e-8(b); 29 C.F.R. §§ 1601.13(c), 1626.10; *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1372–74 (D.C. Cir. 2008). Pursuant to the worksharing agreement between the EEOC and the OHR, they "each designate the other as its agent for the purpose of receiving and drafting charges." Pl.'s Opp'n Def.'s Mot. Dismiss, Ex. 2, Worksharing Agreement ¶ II.A. Charges received by the OHR are "deemed received" by the EEOC. *See* 29 C.F.R. § 1626.10(c); *cf. Schuler*, 514 F.3d at 1372.

Because Maggio is appealing the dismissal of count I of his amended complaint for lack of timeliness pursuant to Federal Rule of Civil Procedure 12(b)(6), this court must "accept all factual allegations in the complaint as true" and "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see, e.g.*, *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 163–64 (D.C. Cir. 2015). The court may also consider documents that are undisputed by the parties. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *Hollis v. U.S. Dep't of the Army*, 856 F.2d 1541, 1544 (D.C. Cir. 1988).

Notwithstanding the worksharing agreement, the record shows that information received by the OHR is not necessarily passed on to the EEOC. Maggio submitted an intake questionnaire to the OHR on April 8, 2012, on which he noted that he was represented by an attorney. A copy of this questionnaire, which both parties attached to their motions in the district court, shows that Maggio supplied his attorney's name, address, and telephone number. Maggio listed his own address

as "3032 Rodman Street, NW, Apt. 24, Washington D.C. 20008." Maggio and his attorney, A.J. Dhali, both attended the intake meeting with the OHR on May 11, 2012, where Maggio filled out EEOC Form 5, the form used to cross-file a charge with the OHR and the EEOC. EEOC Form 5, unlike the OHR's intake questionnaire, does not provide space for a complainant to indicate representation by an attorney. Maggio, however, indicated such representation in the box for his name. There, Maggio wrote his own name and immediately below, within the same box, "c/o A.J. Dhali, Esq, 1629 K Street, NW, Suite 300, Washington, DC 20006." In the box for "Home Phone," Maggio put his attorney's email address, "ajdhali@dhalilaw.com," and his attorney's telephone number. Maggio put his Rodman Street address in the box for "Street Address."

Although listing his Rodman Street address on the OHR intake questionnaire and EEOC Form 5, on or about April 1, 2012, Maggio temporarily had gone to South Carolina to care for his mother, who was in the final stages of Alzheimer's Disease. In opposing the motion to dismiss his complaint, Maggio explained that at that time he was "between residences" and "continued to receive mail at the D.C. address, and also continued to apply for jobs within the District," having not yet decided to relocate permanently to South Carolina. Pl.'s Opp'n Def.'s Mot. Dismiss 11. Although his move became permanent around September 2012 and he did not update his address with the EEOC, Dhali remained his attorney and Dhali's address remained accurate.

Notwithstanding the "c/o" and Maggio's attorney's name, title, and full address on EEOC Form 5, on November 26, 2012, the EEOC mailed a right-to-sue notice only to Maggio's Rodman Street address. Maggio did not receive this notice, and the EEOC did not mail the notice to his attorney. When his

attorney contacted the EEOC by telephone and fax on June 4, 2013, and again by telephone ten days later, the 90-day statute of limitations to file suit had expired, *see* 42 U.S.C. § 2000e-5(f)(1).  On June 17, 2013, the EEOC's D.C. field office emailed Dhali requesting a letter of representation; Dhali emailed the letter the same day, and the EEOC then emailed the right-to-sue notice to Dhali.  Maggio, through Dhali, filed suit on June 21, 2013.

## II.

The Supreme Court and this court have repeatedly recognized that "Congress expected that the administrative stage of the Title VII process would be conducted by laymen — not lawyers," *Bethel v. Jefferson*, 589 F.2d 631, 643 (D.C. Cir. 1978); *see EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 124 (1988); *Howard v. Pritzker*, 775 F.3d 430, 443 (D.C. Cir. 2015); *Rozen v. District of Columbia*, 702 F.2d 1202, 1203–04 (D.C. Cir. 1983).  Consequently, agencies must take care not to "extinguish rights . . . simply by creating procedural labyrinths," *Bethel*, 589 F.2d at 643; *see Love v. Pullman Co.*, 404 U.S. 522, 527 (1972); *Coles v. Penny*, 531 F.2d 609, 614–15 (D.C. Cir. 1976).  That Maggio was represented by an attorney does not afford the court leave to abandon him to "a web of procedural traps," *Bethel*, 589 F.2d at 640 (citation and internal quotation marks omitted); "[t]he fact that the particular complainant might have had an attorney at one stage of the process is of no relevance, for [Title VII] must be given a construction rendering its mechanisms workable in the hands of laymen generally," *id.* at 642 n.67; *see Schuler*, 514 F.3d at 1376; *see also Commercial Office Prods. Co.*, 486 U.S. at 124; *Bethel*, 589 F.2d at 641 n.61.

This circuit is not alone in recognizing the EEOC's responsibility to guide complainants through the administrative

process. To that end, our sister circuits and other courts have avoided penalizing plaintiffs who failed to notify the EEOC of changes in address when they reasonably relied on the EEOC to send correspondence to their attorneys. As the Fourth Circuit acknowledged in *Coleman v. Talbot County Detention Center*, 242 F. App'x 72, 74 (4th Cir. 2007), "it is not at all unreasonable for a layperson who has retained counsel to assume that all further matters will be handled by her attorney." Although the plaintiff had failed to apprise the EEOC of her change of address, the Fourth Circuit nevertheless concluded that "the primary fault is that of the EEOC for not — as both counsel and Coleman reasonably expected — sending a copy of the right-to-sue letter to counsel." *Id.*; *see also Stallworth v. Wells Fargo Armored Servs. Corp.*, 936 F.2d 522, 525 (11th Cir. 1991); *Pole v. Citibank, N.A.*, 556 F. Supp. 822, 823 (S.D.N.Y. 1983). Having taken the "reasonable step[]" of instructing the EEOC to contact him in care of Dhali, *see St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1317 (7th Cir. 1984), and failing to receive his right-to-sue notice through "'fortuitous circumstances' or 'events beyond his control,'" *i.e.*, the EEOC's disregard of his written instruction, *see Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1243 (11th Cir. 1982) (citation omitted), Maggio is entitled to equitable tolling.

**A.**

Maggio reasonably expected the EEOC to send correspondence regarding his case to his attorney, Dhali, because he directed the EEOC to do so on the charge form, EEOC Form 5. The court's conclusion that Maggio is not entitled to equitable tolling hinges on the fact that Maggio supplied an incorrect address for himself on EEOC Form 5. Op. at 5–6. But Maggio may prove his diligence by showing that he "had notified the EEOC that he had moved *or* had taken reasonable steps to ensure that he would receive mail delivered" to his previous residence. *See St. Louis*, 744 F.2d at 1317

(emphasis added) (citing *Pole*, 556 F. Supp. at 823); *see also Lewis*, 673 F.2d at 1243. Maggio included his attorney's name, title ("Esq"), and address on EEOC Form 5 after the designation "c/o," as well as an email address that obviously belonged to Dhali ("ajdhali@dhalilaw.com") and Dhali's telephone number. Use of the phrase "c/o," which means "care of," is commonly used to designate mail that should be sent to a person through a third party, *see Webster's Third New International Dictionary* 338 (1993), and was thus sufficient to alert the EEOC that mail on this matter was to be sent to Maggio through Dhali. Furthermore, the information that Maggio provided on EEOC Form 5 made clear that Dhali was an attorney: *Black's Law Dictionary* defines "Esq.," or "esquire," as "[a] candidate for knighthood," "[a] member of the gentry whose rank was inferior to that of a knight," "[a] landed gentleman," and "[a] title of courtesy commonly appended after the name of a lawyer." *Black's Law Dictionary* 663 (10th ed. 2014). Lest there be some doubt that Maggio was not referring to Dhali in his capacity as landed gentry, Dhali's email domain is listed on EEOC Form 5 as "dhalilaw.com." The fact that Maggio supplied an email address that belonged to Dhali, not himself, should have further alerted the EEOC that Maggio expected the agency to communicate with Dhali.

The court dismisses Maggio's attempts to alert the EEOC and the OHR to his representation by an attorney for the reason that Maggio never explicitly directed either agency to communicate with his attorney. Op. at 5 n.4, 6 n.5; *see also Maggio v. Wis. Ave. Psychiatric Ctr., Inc.*, 987 F. Supp. 2d 38, 42 (D.D.C. 2013). Not so. The meaning of "c/o" is "not ambiguous." *Cf. In re NETtel Corp., Inc.*, 364 B.R. 433, 461 (Bankr. D.D.C. 2006) (citation and internal quotation marks omitted). Nor, in the present context, is the title "Esq.," and it was not unreasonable for Maggio to expect correspondence would be sent to Dhali after the EEOC was apprised of

Maggio's representation. Significantly, the EEOC's compliance manual directs its employees to send a right-to-sue notice to *both* the charging party and his attorney. 1 EEO Compliance Manual § 6.5(b). No other meaning, and the court suggests none, could reasonably have been ascribed by the EEOC to the information on Maggio's EEOC Form 5 other than that Dhali was Maggio's attorney and correspondence regarding Maggio's case should be directed to his attorney. The cases on which the court relies for the suggestion that the EEOC is not required to send a right-to-sue notice to a complainant's attorney, *see* Op. at 6 n.5, are inapposite. In each, the complainant or the complainant's attorney had received actual notice that the right-to-sue letter had been sent, and suit still was not timely filed. *See Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850–51 (7th Cir. 2001); *Hopkins v. United Parcel Serv.*, 221 F.3d 1334, 2000 WL 923458, at *4–5 (6th Cir. 2000) (unpublished); *Ball v. Abbott Adver., Inc.*, 864 F.2d 419, 421 (6th Cir. 1988).

Furthermore, if Maggio's EEOC Form 5 was ambiguous, the fault lies with the EEOC, not Maggio. Maggio not only alerted the OHR on its intake questionnaire that Dhali was his attorney, he also included information on EEOC Form 5 itself that was sufficient to alert the EEOC that he was represented by an attorney and, in any event, that correspondence should be directed to Dhali. The OHR, it turns out, does not automatically share its intake questionnaires with the EEOC, and unlike the OHR intake questionnaire, EEOC Form 5 does not contain a space for a claimant to indicate representation by an attorney. Although Maggio failed to update his own address, there is no equity in dismissing Maggio's complaint as untimely when he took reasonable steps to ensure that his attorney would receive notice from the EEOC and any confusion easily could have been avoided if EEOC Form 5 included space for complainants to indicate representation by an attorney and to instruct the EEOC to direct correspondence to the attorney. The court holds

Maggio to the EEOC Form 5 reference to the requirement to update his address, *see* Op. 3, 5, but not the EEOC to what was clear on the face of its own form.

**B.**

A further consideration weighing in Maggio's favor that the court ignores altogether is the agency relationship established by the worksharing agreement. Maggio contends that knowledge of his representation by an attorney should be imputed to the EEOC through the EEOC's agency relationship with the OHR. The worksharing agreement between the OHR and the EEOC provides that they are each other's agents "for the purpose of receiving and drafting charges." Worksharing Agreement ¶ II.A. "An agent has actual authority to take . . . acts necessary or incidental to achieving the principal's objectives." RESTATEMENT (THIRD) OF AGENCY § 2.02 (2006). "[I]t is natural to assume that the principal wishes, as an incidental matter, that the agent take the steps necessary and that the agent proceed in the usual and ordinary way" to accomplish the principal's objectives. *Id.* cmt. d. Furthermore, "notice of a fact that an agent knows . . . is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal." *Id.* § 5.03; *see In re Color Tile Inc.*, 475 F.3d 508, 513 (3d Cir. 2007); *Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 773 & n.4 (4th Cir. 1995); *Bowen v. Mount Vernon Sav. Bank*, 105 F.2d 796, 798–99 (D.C. Cir. 1939).

The defendant, Maggio's former employer, urges a narrow reading of the worksharing agreement, maintaining that the OHR is not the EEOC's agent for the purpose of receiving instructions about communicating with a complainant's attorney, even though Maggio provided his attorney's name and contact information on the OHR intake questionnaire he filed to initiate the process of filing a charge. Such a reading is at odds with our precedent, which recognizes that "[t]hese worksharing

agreements are meant to ease charges through the remedial system, not to erect hurdles claimants must decipher and overcome," *Schuler*, 514 F.3d at 1374. Thus, "[t]he DC OHR's and EEOC's procedural requirements are to be read broadly and flexibly in the employee's favor in light of their remedial purposes and because they are designed for laypersons." *Esteños v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 885–86 (D.C. 2008). "These agreements are intended to eliminate duplication of effort between the agencies and to provide an efficient procedure for claimants to seek redress for their grievances." *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1177 (9th Cir. 1999); *accord Nichols v. Muskingum Coll.*, 318 F.3d 674, 679 (6th Cir. 2003). A "restrictive interpretation" of the acts constituting receiving and drafting charges "would not further these goals." *See Laquaglia*, 186 F.3d at 1177.

The worksharing agreement's agency provision is designed to help complainants easily initiate Title VII's administrative process — *i.e.*, file a charge — without having to worry about approaching the correct office. *See Esteños*, 952 A.2d at 886. Collecting information about the complainant's representation by an attorney is a normal part of the intake process — notably, both the OHR and the EEOC's *intake* questionnaires ask for information about representation by an attorney, *see* Pl.'s Opp'n Def.'s Mot. Dismiss, Ex. 6, OHR Employment Intake Questionnaire; EEOC, Intake Questionnaire 4 (2009), http://www.eeoc.gov/form/upload/Uniform-Intake-Questionnaire.pdf (last visited July 10, 2015). Collecting this information is thus the usual way for an agency to "receive" information relevant to a charge and is "material to the [OHR's] duties to the [EEOC]." *See* RESTATEMENT (THIRD) OF AGENCY § 5.03; *see also id.* § 5.02(1). Maggio's notification to the OHR that he was represented by an attorney therefore put the EEOC on notice as to same. *Id.* §§ 5.02–5.03; *see Martin Marietta*

*Corp.*, 70 F.3d at 773.  Requiring complainants to separately inform the OHR and the EEOC that they are represented by an attorney, where neither intake questionnaire so requires, is precisely the kind of bureaucratic technicality resulting in duplication of effort that Title VII and the worksharing agreements were designed to avoid.  *See Love*, 404 U.S. at 527; *Laquaglia*, 186 F.3d at 1177.

## C.

The court's suggestion otherwise notwithstanding, the conclusion that Maggio is entitled to the benefit of equitable tolling is consistent with our precedent.  In *Dyson*, 710 F.3d at 421–22, *see* Op. at 6, the court held that the plaintiff was not entitled to equitable tolling of the statute of limitations for filing an administrative charge when she waited until the very end of the limitations period to file an intake questionnaire with the EEOC and disregarded specific instructions to follow up with the EEOC until after the limitations period had expired.  Maggio exhibited no such dilatory behavior.  Contrary to the court's suggestion, Op. at 2, Maggio did not act unreasonably in waiting 13 months to contact the EEOC about his right-to-sue notice. The Supreme Court has held that

> [i]f a complainant is dissatisfied with the progress the EEOC is making on his or her charge . . . he or she *may* elect to circumvent the EEOC procedures and seek relief through a private enforcement action in a district court.  The 180-day limitation provides only that this private right of action does not arise until 180 days after a charge has been filed. . . . After waiting for that period, the complainant *may* either file a private action within 90 days after EEOC notification or *continue to leave the ultimate resolution of his charge to the efforts of the EEOC.*

*Occidental Life Ins.*, 432 U.S. at 361 (emphases added). The EEOC's regulations allow a complainant to receive a right-to-sue notice upon request "*at any time* after the expiration of one hundred eighty (180) days from the date of filing of the charge with the Commission." 29 C.F.R. § 1601.28(a)(1) (emphasis added); *see Martini*, 178 F.3d at 1345. Case law confirms that the EEOC regularly takes much longer than 180 days, or even more than a year, to resolve charges. *See, e.g.*, *Robinson v. Ergo Solutions, LLC*, — F. Supp. 3d —, No. 14-379 (JDB), 2015 WL 1422138, at *6 (D.D.C. Mar. 30, 2015) (two years, four months: charge filed in August 2011, right-to-sue notice issued in December 2013); *Olatunji v. District of Columbia*, 958 F. Supp. 2d 27, 29 (D.D.C. 2013) (one year, four months: charge filed in February 2009, right-to-sue notice issued in June 2010); *Thomas v. Wash. Metro. Area Transit Auth.*, 907 F. Supp. 2d 144, 147 (D.D.C. 2012) (one year, three months: charge filed in May 2010, right-to-sue notice issued in August 2011).

As this court has recognized, "Congress well understood that the EEOC's limited resources preclude it from investigating every charge within 180 days but nevertheless 'hoped that recourse to the private lawsuit will be the exception and not the rule.'" *Martini*, 178 F.3d at 1346 (citation omitted) (quoting 118 CONG. REC. 7168 (1972)); *see also Occidental Life Ins.*, 432 U.S. at 362–66. To that end, courts have rejected the application of state statutes of limitations and the doctrine of laches to Title VII complaints filed in federal court after lengthy administrative proceedings. *See Kannikal v. Attorney Gen. U.S.*, 776 F.3d 146, 150 (3d Cir. 2015); *Howard*, 775 F.3d at 441–42. Congress's intent that Title VII claims be resolved through the administrative process "whenever possible," *Occidental Life Ins.*, 432 U.S. at 368, would likewise be frustrated by requiring complainants to request a right-to-sue notice at the earliest possible opportunity or risk losing the benefit of equitable tolling down the road. And given the wide variance in the

amount of time the EEOC requires to resolve claims, Maggio's decision (through his attorney) not to contact the EEOC until June 2013 does not, under the circumstances, show a lack of diligence.

The court purports to be following the rule of our sister circuits, *see* Op. at 5–6 & n.5, but those courts have not held that a complainant's failure to update his address with the EEOC is an absolute bar to equitable tolling when he has made other appropriate arrangements to receive mail. *See Coleman*, 242 F. App'x at 74; *Stallworth*, 936 F.2d at 525; *cf. St. Louis*, 744 F.2d at 1317. In *Day v. Lincoln Ins. Agency*, 1 F. App'x 521, 523 (7th Cir. 2001), the Seventh Circuit held that the plaintiff was not entitled to equitable tolling when he did not apprise the EEOC of his new address *after* his order to the post office to forward his mail had expired, but the court acknowledged that the plaintiff's instruction to the post office "at least arguabl[y] . . . created the equivalent of an accurate address for him, as long as that instruction was in effect." Similarly to *Day*, the other cases cited by the court involve complainants who both moved without alerting the EEOC to their new addresses *and* without making appropriate arrangements to receive mail sent to their old addresses: *Abraham v. Woods Hole Oceanographic Institute*, 553 F.3d 114, 120 (1st Cir. 2009); *Pearison v. Pinkerton's Inc.*, 90 F. App'x 811, 813 (6th Cir. 2004); *Nelmida v. Shelly Eurocars, Inc*, 112 F.3d 380, 385 (9th Cir. 1997); *Hunter v. Stephenson Roofing, Inc.*, 790 F.2d 472, 475 (6th Cir. 1986); *St. Louis*, 744 F.2d at 1317. Or the cases involve complainants who received actual notice of their right to sue in time to file within the statute of limitations and failed to do so: *Threadgill*, 269 F.3d at 850–51; *Hopkins*, 2000 WL 923458, at *4–5; *Nelmida*, 112 F.3d at 385; *Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir. 1989); *Ball*, 864 F.2d at 421; *Hunter*, 790 F.2d at 473. Maggio's efforts to have the EEOC send correspondence to him in care of his attorney, Dhali, and his diligent pursuit of

his rights once he received actual notice distinguish his case from those relied on by the court.

Accordingly, because Maggio exercised reasonable diligence in alerting the EEOC that it should send correspondence to his attorney, and through no fault of his own the EEOC did not do so, he is entitled to equitable tolling of the 90-day statute of limitations to file suit, and I respectfully dissent.